IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                                       Civ. No. 16-501 MV/KK
                                                                     (Cr. No. 02-2092 MV)

DAVID LOUIS KING,

    Defendant/Movant.

**MAGISTRATE JUDGE'S SUPPLEMENTAL
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendant/Movant David Louis King's ("Defendant") Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) ("Section 2255 Motion"), filed May 26, 2016.

## I. Introduction

On December 1, 2016, pursuant to a referral by United States District Judge Martha Vázquez, I filed Proposed Findings and a Recommended Disposition ("PFRD") recommending that the Court grant Defendant's Section 2255 Motion, vacate his sentence, and resentence him at the Court's earliest opportunity. (Docs. 4, 12.) Since that date, developments of potential significance to the PFRD have occurred. The Tenth Circuit has issued *United States v. Harris*, 844 F.3d 1260 (10th Cir. 2017), and, as a result, the Government has modified its position in this case. Also, the Government has objected to the PFRD, and one district judge and three magistrate judges in this District have since reached conclusions contrary to those I reached in the PFRD. These Supplemental Proposed Findings and Recommended Disposition will address these developments.

On February 18, 2004, Defendant pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Doc. 1 at 2; CR Docs. 37, 56, 57.) The Court determined that Defendant had previously been convicted of three violent felonies, and therefore imposed an enhanced sentence of fifteen years' imprisonment pursuant to the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e)(1). (CR Doc. 83 at 24, 28.) In his Section 2255 Motion, Defendant asks the Court to reduce his sentence, because the armed robbery conviction on which the Court relied to enhance it no longer qualifies as a violent felony under the ACCA in light of the United States Supreme Court's decision in *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015).[1] (Docs. 1, 10.) In the PFRD, I agreed, and recommended that Defendant's Section 2255 Motion be granted. (*See generally* Doc. 12.) I have meticulously reexamined that recommendation in light of the Tenth Circuit's decision in *Harris*, 844 F.3d at 1260, the Government's objections and modified position, and recent decisions by other judges in this District. However, for the following reasons, these developments do not alter my recommendation.

## II. Analysis

As explained in detail in the PFRD, which I incorporate by reference, the pertinent issue in this case is whether New Mexico armed robbery categorically has "as an element the use, attempted use, or threatened use of physical force against the person of another," and therefore qualifies as a "violent felony" under the ACCA's force clause.[2] 18 U.S.C. § 924(e); *Harris*, 844

---

[1] I will refer to *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), as "*Samuel Johnson*" to distinguish it from *Johnson v. United States*, 559 U.S. 133 (2010), which I will refer to as "*Curtis Johnson*." Many courts refer to these cases as "*Johnson II*" and "*Johnson I*," respectively; however, this nomenclature could suggest that the two decisions arise out of the same litigation or concern the same defendant, which they do not.

[2] To determine whether an offense is a violent felony under the ACCA's force clause, courts must generally apply what is called the "categorical approach," considering only the offense's statutory elements, and not the actual facts underlying the defendant's prior conviction. *Harris*, 844 F.3d at 1263; *United States v. Smith*, 652 F.3d 1244, 1246

F.3d at 1263-64.  If armed robbery qualifies as a violent felony under the force clause, then the Court may rely on Defendant's 1986 New Mexico armed robbery conviction to enhance his sentence.  However, if the offense does *not* qualify as a violent felony under the force clause, then the Court can no longer rely on Defendant's conviction of it, because it can only have qualified as an ACCA predicate offense under the residual clause, which *Samuel Johnson* struck down as unconstitutionally vague.  135 S. Ct. at 2557-58.

In the PFRD, I proposed to find that New Mexico armed robbery does not categorically have "as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of the force clause.  18 U.S.C. § 924(e); (Doc. 12.)  The term "physical force," as used in the ACCA, means "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Curtis Johnson*, 559 U.S. at 140 (emphasis in original).  Although the "degree of force necessary to inflict pain" might consist of no more than "a slap in the face, for example," it certainly consists of something more than mere offensive touching.  *Id.* at 143; *Harris*, 844 F.3d at 1265.  As demonstrated in the PFRD, there is at least a realistic probability that a defendant could be convicted of New Mexico armed robbery without using, or threatening or attempting to use, force capable of causing physical pain or injury to another person.  (Doc. 12 at 8-22.)

The Tenth Circuit recently addressed a similar question in *Harris*, and its decision must therefore inform, though not necessarily change, the reasoning in the PFRD.  In *Harris*, the Tenth Circuit held that Colorado robbery categorically has as an element the use, attempted use, or threatened use of physical force against the person of another, and so satisfies the ACCA's

---

(10th Cir. 2011).  This approach requires courts to presume that a prior conviction "rested upon nothing more than the least of the acts criminalized" by the applicable state statute.  *Moncrieffe v. Holder*, — U.S. —, 133 S. Ct. 1678, 1684 (2013) (internal punctuation marks omitted); *Harris*, 844 F.3d at 1264.  However, "in construing the minimum culpable conduct, such conduct only includes that in which there is a realistic probability, not a theoretical possibility the state statute would apply."  *Harris*, 844 F.3d at 1264 (internal quotation marks omitted).

3

force clause. 844 F.3d at 1270. In so holding, the *Harris* court relied on a Colorado Supreme Court decision which held that Colorado robbery "tracks the elements of common law robbery," and which emphasized the "violent nature of the taking" as the gravamen of the offense. *Id.* at 1266-67 (quoting *Colorado v. Borghesi*, 66 P.3d 93, 99-101 (Colo. 2003)). The *Harris* court rejected the defendant's argument that the Colorado Supreme Court "might not have meant 'violent' when it said 'violent,'" and concluded that "robbery in Colorado requires a 'violent taking,' which we believe is consistent with the physical force required by the ACCA's elements clause." *Id.* at 1266-67. The *Harris* court further concluded that Colorado robbery by "threats or intimidation" requires the threatened use of *Curtis Johnson* physical force, rejecting the defendant's argument that the threatened use of force could be against the property, rather than the person, of another. *Id.* at 1268-70.

Two points in the *Harris* decision are particularly instructive here. First, the *Harris* court held that, because the Colorado Court of Appeals' decision in *Colorado v. Davis*, 935 P.2d 79 (Colo. App. 1996), predated the Colorado Supreme Court's decision in *Borghesi*, *Davis* was "not controlling . . . [t]o the extent [it] suggests a Colorado robbery conviction can be based on less than violent force." *Harris*, 844 F.3d at 1267. Thus, the Tenth Circuit intimated that the force used in *Davis* was "less than violent force." *Id.* The *Davis* court, in turn, held that Colorado robbery "includes the snatching of an object attached to the person of another if force is used to tear or break the attachment." 935 P.2d at 84-85. As such, the *Davis* court affirmed the defendant's robbery conviction where the defendant "pulled [a] purse from the victim's arm with sufficient force to break the strap." *Id.* at 86. The *Harris* decision therefore suggests that the force used in a *Davis*-like purse-snatching would not rise to the level of *Curtis Johnson* physical force. 844 F.3d at 1267.

4

New Mexico law regarding purse-snatchings is similar to *Davis*, but more extensive and authoritative. In 1976, the New Mexico Supreme Court held that

> [t]he question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion. . . . Assuming that the docketing statement, which was filed by the defendant-respondent, presents the facts accurately, and viewing these facts in the light most favorable to the State, we conclude that the evidence supported the verdict of the jury that the snatching of the purse was accompanied by force sufficient to convert the crime from larceny to robbery.

*New Mexico v. Clokey*, 1976-NMSC-035, ¶ 3, 89 N.M. 453, 553 P.2d 1260. The docketing statement on which the New Mexico Supreme Court relied, in turn, described the facts as follows:

> [t]he complaining witness was walking toward the [d]efendant and was carrying a purse under her left arm. The purse was not fastened to her person, nor was it in the grasp of her hand. The [d]efendant allegedly ran toward the complaining witness and with his left hand pushed the purse through the woman's arm, grabbed the purse and ran. It is alleged that in so doing the [d]efendant touched the inside of the woman's arm, causing the woman to stumble. The woman was in her seventies and tottered unsteadily when she walked. There was no resistance offered by the woman whose purse was taken; there was no struggle for the purse; and the [d]efendant, in the complaining witness's words, "snatched" the purse in one continuous motion and ran.

*New Mexico v. Clokey*, No. 2479, Docketing Statement at 1-2 (N.M. App. filed Mar. 22, 1976).

Likewise, in *New Mexico v. Curley*, the New Mexico Court of Appeals held that the jury could find a purse snatching to constitute robbery if it determined that the defendant "shoved the victim to help himself relieve her of her purse."[3] 1997-NMCA-038, ¶ 15, 123 N.M. 295, 939 P.2d 1103. The *Curley* victim described the force used against her as "kind of a shove," as a result of which she "kind of leaned—was pushed—toward [her] daughter." *Id.* at ¶ 3, 123 N.M.

---

[3] Conversely, the *Curley* court held that the jury could find that the defendant "took the purse by surprise from a person who was not resisting," and therefore committed larceny, if the jury determined the shove was "an incidental touching due to [the d]efendant's drunkenness," and not a deliberate act to aid in the purse snatching. 1997-NMCA-038 at ¶¶ 17-18, 123 N.M. 295, 939 P.2d 1103.

295, 939 P.2d 1103.  Finally, in *New Mexico v. Verdugo*, the New Mexico Court of Appeals held that there was sufficient evidence to sustain the defendant's robbery conviction where he "grabbed" the victim's purse from her arm, the victim "struggled to retain control" of it, and "the strap eventually broke."  2007-NMCA-095, ¶ 27, 142 N.M. 267, 164 P.3d 966, *cert. granted*, 142 N.M. 330 (N.M. 2007), *cert. quashed*, 145 N.M. 532 (N.M. 2008).  At trial, the victim testified that she struggled to hold onto her purse for "[m]aybe a couple of seconds" before the purse strap broke.  *New Mexico v. Verdugo*, COA No. 25,534, Partial Transcript of Proceedings at TR-94 (N.M. App. filed Sept. 28, 2005).

As noted above, the Tenth Circuit in *Harris* determined that *Davis*, a Colorado Court of Appeals decision, was not controlling to the extent it was inconsistent with *Borghesi*, a later Colorado Supreme Court decision.  844 F.3d at 1267.  Here, however, the New Mexico Court of Appeals' purse-snatching decisions in *Curley* and *Verdugo* are wholly consistent with the New Mexico Supreme Court's prior purse-snatching decision in *Clokey*.  The *Verdugo* decision also post-dates, and is consistent with, *New Mexico v. Bernal,* 2006-NMSC-050, 140 N.M. 644, 146 P.3d 289.  Although the New Mexico Supreme Court stated in *Bernal* that, "[s]ince the robbery statute is designed to protect citizens from violence, . . . the legislature intended to allow for separate charges for each individual against whom violence or the threat of violence is separately used" in the course of a taking, it used the terms "force" and "violence" interchangeably, consistent with clearly established New Mexico precedent, and made no attempt to address the nature or quantum of force this element requires, or to revisit *Clokey* and its progeny.[4]  *Id.* at ¶¶

---

[4] The *Bernal* court did cite to *United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993), in which the Tenth Circuit held that New Mexico robbery is a violent felony under the ACCA.  2006-NMSC-50 at ¶ 28, 140 N.M. 644, 146 P.3d 289.  However, both *Bernal* and *Lujan* were decided well before *Curtis Johnson*, and thus did not consider whether New Mexico robbery categorically requires the use of force capable of causing physical pain or injury to another person.  *See United States v. Killion*, 7 F.3d 927, 930 (10th Cir. 1993) (Tenth Circuit panel decision is not binding on this Court where there is a "superseding contrary decision by the Supreme Court"); *see, e.g., United States v. Eason*,

19, 28, 31.  Thus, unlike the *Harris* court in its treatment of *Davis*, here there is no basis on which to discount *Clokey*, *Curley*, and *Verdugo*.  *See Harris*, 844 F.3d at 1264 ("Decisions from the state supreme court best indicate" what conduct the elements of an offense realistically encompass, "supplemented by decisions from the intermediate-appellate courts.").  And, like the *Harris* court, I do not believe that the force used in purse-snatching robberies rises to the level of *Curtis Johnson* physical force.  (Doc. 12 at 10-11.)

The second point in *Harris* that I find particularly pertinent here is how the court distinguished the matter before it from *United States v. Gardner*, 823 F.3d 893 (4th Cir. 2016).  *Harris*, 844 F.3d at 1267-68 & n.6.  In *Gardner*, the Fourth Circuit held that North Carolina robbery is not a violent felony under the ACCA's force clause.  823 F.3d at 803-04.  The *Gardner* court reasoned that "the minimum conduct necessary to sustain a [robbery] conviction . . . does not necessarily include the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person," where "the degree of force used [to commit a robbery] is immaterial, so long as it is sufficient to compel the victim to part with his property."  *Id.* (internal quotation marks and citations omitted).  Distinguishing *Gardner* from the matter before it, the *Harris* court suggested that North Carolina robbery was not a violent felony under the ACCA's force clause because, unlike Colorado robbery, it did not "remain[] committed to the common law definition of robbery" in this regard.[5]  844 F.3d at 1267-68 & n.6.

New Mexico robbery law is very like the North Carolina law the Tenth Circuit distinguished from Colorado law in *Harris*.  As long ago as 1967, the New Mexico Court of

---

829 F.3d 633, 641 (8th Cir. 2016) (reevaluating Eighth Circuit precedent regarding application of ACCA to Arkansas robbery in light of *Curtis Johnson*).

[5] The *Harris* court also distinguished *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016) (Massachusetts armed robbery), *United States v. Bell*, 840 F.3d 963 (8th Cir. 2016) (Missouri robbery), and *Eason*, 829 F.3d at 633 (Arkansas robbery), for similar reasons.  844 F.3d at 1267-68 & n.6.

7

Appeals held that, "[w]here [robbery by] force is charged, *the issue is not how much force was used*, but whether the force was sufficient to compel the victim to part with his property." *New Mexico v. Sanchez*, 1967-NMCA-009, ¶ 11, 78 N.M. 284, 430 P.2d 781 (emphasis added). Six years later, the appellate court reiterated this point:

> [t]he use or threatened use of force must be the lever by which the thing of value is separated from the victim. *The amount or degree of force is not the determinative factor.* Evidence of jostling or causing the victim to fall as property is taken is a sufficient showing to establish the use of force.

*New Mexico v. Martinez,* 1973-NMCA-120, ¶ 4, 85 N.M. 468, 513 P.2d 402 (emphasis added) (internal ellipses and citations omitted). In *Curley*, the appellate court extended this reasoning to property "attached" to the victim, holding that the force element of robbery is satisfied whenever the defendant removes property from the victim with sufficient force to overcome some type of resistance, including "the resistance of attachment." *Curley*, 1997-NMCA-38 at ¶¶ 4, 7, 10, 123 N.M. 295, 939 P.2d 1103. Thus,

> *when property is attached to the person or clothing of a victim so as to cause resistance, any taking is a robbery*, and not larceny, because the lever that causes the victim to part with the property is the force that is applied to break that resistance; however, when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery. In our cases where we have not found sufficient force to be involved, the victim did not resist the property being taken from his person.[6]

*Id.* at ¶¶ 6, 7, 123 N.M. 295, 939 P.2d 1103 (emphasis added).

---

[6] Although the *Curley* court used the term "dictum" to describe language in *Sanchez* and *Martinez* to the effect that "even a slight amount of force . . . is sufficient" to satisfy the force element of New Mexico robbery, the court nevertheless harmonized this language with other New Mexico Court of Appeals decisions to derive the rule of law it applied. 1997-NMCA-38 at ¶¶ 4, 6, 7, 123 N.M. 295, 939 P.2d 1103. Moreover, as discussed herein and in the undersigned's original PFRD, the *quantum* of force is not determinative under New Mexico robbery law; what is determinative is whether the force used is sufficient to overcome some kind of resistance. *Sanchez*, 1967-NMCA-009 at ¶ 11, 78 N.M. 284, 430 P.2d 781; *Martinez,* 1973-NMCA-120 at ¶ 4, 85 N.M. 468, 513 P.2d 402; *Curley*, 1997-NMCA-38 at ¶¶ 4, 7, 10, 123 N.M. 295, 939 P.2d 1103. Logically, if the victim's resistance is slight, then the force used to overcome it may also be slight, and yet still sufficient to satisfy robbery's force element. New Mexico's line of purse-snatching cases illustrates this point, and shows that criminal defendants in New Mexico have been convicted of robbery for using less than *Curtis Johnson* physical force.

In short, for nearly fifty years, the law in New Mexico has been that robbery requires the use of, not any particular quantum of force, but rather sufficient force to overcome some kind of resistance. *Id.* at ¶¶ 9-10, 123 N.M. 295, 939 P.2d 1103.  This force element is consistent with the force element of North Carolina robbery, which *Gardner* found not to rise to the level of *Curtis Johnson* force, and which *Harris* found to be distinct from the force element of Colorado robbery.  *See also United States v. Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016) (government conceded Maryland robbery is *not* a violent felony under ACCA's force clause, where force element of crime is satisfied "so long as the victim resisted the taking and her resistance had been overcome") (internal quotation marks and citation omitted); *but see United States v. Fritts* 841 F.3d 937, 943-44 (11th Cir. 2016) (Florida robbery *is* a violent felony under the ACCA's force clause, because, *inter alia*, the force element of the crime "requires both resistance by the victim and physical force by the offender that overcomes that resistance") (internal quotation marks and citation omitted).  Thus, although the *Harris* court found that Colorado robbery satisfies the ACCA's force clause, its reasoning supports the conclusion that New Mexico robbery does not.

In other cases in this District, and in its Objections to the original PFRD in this case, the Government expressly conceded that New Mexico simple robbery does not categorically require the use of *Curtis Johnson* force:

> [a]s conceded for purposes of this case, force necessary to effect a robbery when not armed with a deadly weapon may not always rise to the level of violent force. . . . [A] mere unarmed purse snatch may amount to robbery, but one cannot conclude as a categorical matter that all unarmed purse snatches include "force capable of causing physical pain or injury to another person."

(Doc. 13 at 11); *see also Raymond v. United States*, Civ. No. 16-634 MV/KBM, Order Granting § 2255 Relief (Doc. 16, D.N.M. filed Nov. 8, 2016) (granting defendant's Section 2255 motion

for resentencing because "the Government concedes that the prior robbery conviction [simple robbery under N.M. Stat. Ann. § 30-16-2] does not survive scrutiny under [*Curtis Johnson*]."); *Silva v. United States*, Civ. No. 16-674 JCH/KK, Order (Doc. 11, D.N.M. filed Oct. 11, 2016) (granting defendant's Section 2255 motion for resentencing) *and Silva v. United States*, Civ. No. 16-674 JCH/KK, Notice of Concession (Doc. 7, D.N.M. filed Sept. 22, 2016) ("Defendant's conviction for [New Mexico simple robbery] can no longer be considered a qualifying conviction under the ACCA" because the offense "can be committed without force causing physical pain or injury.").

Relying on *Harris*, however, the Government retracted its concession in this case on February 6, 2017. (Doc. 14.) In the original PFRD, I gave the Government's concession "some weight," and thus must reweigh the matter without it following the Government's retraction. (Doc. 12 at 14.) Nevertheless, for the other reasons stated in the PFRD, and in light of the material distinctions between the Colorado robbery law at issue in *Harris* and the New Mexico robbery law at issue here, I conclude that, even without the Government's concession tipping the scales, New Mexico simple robbery "does not necessarily include [as an element] the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person," *Gardner*, 823 F.3d at 804, and therefore does not satisfy the force clause, and is not a violent felony, under the ACCA.

I have also considered whether the reasoning of recent decisions and recommended dispositions in other cases in this District should cause me to alter my original recommendation. *See Garcia v. United States*, Civ. No. 16-240 JB/LAM, Mem. Op. & Order Overruling Mag. J.'s Amended Proposed Findings & Recommended Disposition (Doc. 37, D.N.M. filed Jan. 31, 2017) (New Mexico robbery is "violent felony" under ACCA's force clause) (Browning, J.);

10

*Rhoads v. United States*, Civ. No. 16-325 JCH/GBW, Proposed Findings & Recommended Disposition (Doc. 17, filed Jan. 25, 2017) (New Mexico armed robbery is "crime of violence" under U.S.S.G. § 4B1.2's force clause) (Wormuth, Mag. J.); *Hurtado v. United States*, Civ. No. 16-646 JAP/GJF, Proposed Findings & Recommended Disposition (Doc. 17, D.N.M. filed Jan. 11, 2017) (New Mexico robbery is "crime of violence" under U.S.S.G. § 4B1.2's force clause) (Fouratt, Mag. J.); *Baker v. United States*, Civ. No. 16-715 PJK/GBW, Proposed Findings & Recommended Disposition (Doc. 9, D.N.M. filed Dec. 15, 2016) (New Mexico armed robbery is "violent felony" under ACCA's force clause) (Wormuth, Mag. J.); *Contreras v. United States*, Civ. No. 16-671 RB/SMV, Proposed Findings & Recommended Disposition (Doc. 12, D.N.M. filed Dec. 6, 2016) (New Mexico robbery is "crime of violence" under U.S.S.G. § 4B1.2's force clause) (Vidmar, Mag. J.).[7]  After painstaking consideration of the above decisions, however, I respectfully maintain a contrary position.

Finally, I will address two points raised in the Government's December 15, 2016 Objections to the PFRD.  (Doc. 13.)  Initially, the Government in its Objections continues to argue that a New Mexico armed robbery conviction requires proof of the *use*, as opposed to the mere *possession*, of a deadly weapon during the commission of a robbery.  (Doc. 13 at 3-9.)  I perceive two significant flaws in this position.  First, it is flatly inconsistent with *New Mexico v. Duran*, 1977-NMCA-99, 91 N.M. 38, 570 P.2d 39, which held that, under New Mexico's armed robbery statute, one can be "armed with" a deadly weapon without using it.  (Doc. 12 at 17-18.) That this determination was not the only reason for the *Duran* court's ruling, or even the predominant one, does not make it obiter dictum, as the Government claims.  1977-NMCA-99, ¶

---

[7] Cases considering Section 4B1.2 of the United States Sentencing Guidelines require a somewhat different analysis, although not necessarily a different outcome, because robbery has long been enumerated as a "crime of violence" in the guideline's commentary, and is now enumerated in its text.  *See, e.g., Hurtado*, Civ. No. 16-646 JAP/GJF, Proposed Findings & Recommended Disposition at 23-24 & n. 19.

11

9, 91 N.M. 38, 570 P.2d 39; (*see* Doc. 13 at 7-8); *see also, e.g.*, *New Mexico v. Chouinard*, 1979-NMCA-145, ¶¶ 5-6, 93 N.M. 634, 603 P.2d 744 (New Mexico's firearm enhancement provision requires "use" of firearm, while its armed robbery statute requires "merely being armed" with a deadly weapon; "[t]he use of a firearm is something beyond mere possession of it," and "[b]y employing the term 'uses' instead of 'while armed' the Legislature requires something more than merely being armed").

Second, the Government reads *New Mexico v. Hamilton* in a way that is internally inconsistent. The Government relies on the following language in *Hamilton* to support its position:

> the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed "while" committing the robbery is highly fact sensitive. When the defendant acquires the weapon *and how he uses it after its acquisition* are paramount.

*Hamilton*, 2000-NMCA-63 at ¶ 12, 129 N.M. 321, 6 P.3d 1043 (emphasis added); (*see* Doc. 13 at 5.) To read this language to require the use of a deadly weapon to prove armed robbery in every case, however, the Government must discard the *Hamilton* court's subsequent quotation of *Massachusetts v. Goldman*, 367 N.E.2d 1181, 1182 (Mass. App. 1977), *i.e.*, "[p]ossession of a dangerous weapon, rather than its use, is the essential element of armed robbery." 2000-NMCA-63 at ¶ 13, 129 N.M. 321, 6 P.3d 1043. If *Hamilton* meant what the Government says, then the court would not have quoted *Goldman* for exactly the opposite proposition.[8]

---

[8] The Government's reliance on the Committee Commentary to the New Mexico Uniform Jury Instruction on armed robbery is similarly flawed. (*See* Doc. 13 at 6.) Although the commentary does state that "[a]rmed robbery is an aggravated form of robbery by use of a deadly weapon," it immediately adds that "[s]ome courts indicate that being armed means only that the defendant has the ability to inflict an injury by having the weapon in his possession, not that the weapon is exhibited." N.M. U.J.I. 14-1621, Committee Commentary. Thus, at best, the commentary is equivocal regarding whether use or mere possession is required.

On the contrary, it is both more internally consistent, and more logical based on the facts presented, to read *Hamilton* as standing for the narrow proposition that, when a defendant steals a deadly weapon during a robbery, the possession of that stolen weapon may be used to elevate the offense from simple to armed robbery if the robber subsequently arms himself with it as a way of completing the robbery, rather than merely possessing the weapon as the bounty of his crime. In *Hamilton*, the defendant committed armed robbery when he stole a gun from the victim's home, and then "used the handgun . . . to bolster his renewed demands . . . for [her] money." *Id.* at ¶ 13, 129 N.M. 321, 6 P.3d 1043. On those facts, "[w]hen the defendant acquire[d] the weapon" *and* "how he use[d] it after its acquisition" were indeed "paramount," because he used the stolen gun to complete the robbery, thereby converting it from mere loot he had stolen to a weapon with which he was armed, *i.e.*, that he had easily accessible and readily available for use. *Id.* at ¶¶ 10, 12, 129 N.M. 321, 6 P.3d 1043; *see New Mexico v. Padilla*, 1996-NMCA-72, ¶¶ 1-11, 122 N.M. 92, 920 P.2d 1046 (in context of aggravated burglary, "armed with a deadly weapon" includes a "deadly weapon which is easily accessible and readily available for use") (internal quotation marks and citations omitted). However, the *Hamilton* court expressly limited its "highly fact sensitive" inquiry to "the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed 'while' committing the robbery."[9]  2000-NMCA-063, ¶ 12, 129 N.M. 321, 6 P.3d 1043. To read *Hamilton* as requiring courts to apply this inquiry to every armed robbery case contravenes its express quotation of *Goldman*, and ignores the exceptional factual circumstances out of which it arose.

---

[9] This is analogous to the issue presented in *United States v. Shuler*, in which the Tenth Circuit considered whether the carrying of firearms stolen during a robbery "was 'in relation to' the robbery within the meaning of [18 U.S.C.] § 924(c)(1)," which criminalizes, *inter alia*, the "carr[ying]" of a firearm "during and in relation to" a crime of violence. 181 F.3d 1188, 1189-90 (10th Cir. 1999). In *Shuler*, the Tenth Circuit determined that the stolen firearms in question were not carried "in relation to" the robbery because they "were not intended or available for use in relation to the robbery, nor did they play an integral role in the robbery." *Id.* at 1191. Rather, "the only relationship between the robbery and the stolen firearms is that the stolen firearms were the bounty or object of the robbery." *Id.*

Finally, in its Objections, the Government relies on *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010), to argue that New Mexico armed robbery satisfies the ACCA's force clause. (Doc. 13 at 10-11.) In *Ramon Silva*, the Tenth Circuit held that New Mexico aggravated assault by means of "unlawfully assaulting or striking at another with a deadly weapon" is a violent felony under the force clause. 608 F.3d at 669-74. The Government relies on the following language in *Ramon Silva* to support its position:

> threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of "force capable of causing physical pain or injury" in two different ways. The conduct could always lead to substantial and violent contact, and thus it would always include as an element the threatened use of violent force. And the conduct could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.

*Ramon Silva*, 608 F.3d at 672 (citations and internal quotation marks omitted); (*see* Doc. 13 at 10.) This reasoning is unremarkable in the context of the crime at issue in *Ramon Silva*, *i.e.*, a crime that has as an element the use of a deadly weapon to threaten or strike at someone. It is beyond rational debate that, by using a deadly weapon in this manner, an aggressor invariably communicates to his victim that he may soon use the weapon to inflict death or great bodily harm.

However, notwithstanding the Government's arguments to the contrary, this reasoning cannot properly be extended to New Mexico armed robbery. As discussed above, while New Mexico robbery does require the use of force, this can be nothing more than the force required to push a purse out from under the victim's arm, or pull it from the victim's grasp. *Clokey*, 1976-NMSC-35 at ¶ 3, 89 N.M. 453, 553 P.2d 1260; *Curley*, 1997-NMCA-38 at ¶ 12, 123 N.M. 295, 939 P.2d 1103; *Verdugo*, 2007-NMCA-95 at ¶ 27, 142 N.M. 267, 164 P.3d 966. Such conduct, unlike the conduct at issue in *Ramon Silva*, does not invariably express or indicate to the victim

that the defendant may soon use greater forc e, *i.e.*, force capable of causing the victim physical pain or injury.  *See Parnell*, 818 F.3d at 980 (a threat to use *Curtis Johnson* physical force "requires some outward expression or indication of an intention to inflict pain, harm or punishment").  Then, as discussed in the undersigned's PFRD and above, unlike the offense at issue in *Ramon Silva*, New Mexico armed robbery does not require the display or use of a deadly weapon, and so does not invariably encompass the communication of a threat to the victim by that means, either.  (Doc. 12 at 16-20); *Parnell*, 818 F.3d 980 (mere possession of dangerous weapon during a robbery does not satisfy the ACCA's force clause, because "the force clause requires the actual, attempted or *threatened* use of physical force, not a mere uncommunicated willingness or readiness to use such force") (emphasis in original) (citation omitted).

  Possessing a deadly weapon during a robbery certainly involves the *risk* that deadly force will be used, but merely possessing a deadly weapon without displaying it does not necessarily convey a *threat* to that effect.  It is worth noting in this regard that *Ramon Silva* was decided before the Supreme Court struck down the ACCA's residual clause in *Samuel Johnson*, and as such the *Ramon Silva* court had no pressing need to distinguish between the "serious potential *risk* of physical injury" as provided by the residual clause, and the "*threatened* use of physical force" as provided by the force clause.  18 U.S.C. § 924(e)(2)(B) (emphases added).  However, to the extent *Ramon Silva* suggests that the *risk* that violent force will be used is equivalent to a *threat* that such force will be used, it conflates the now-invalid residual clause with the still-valid force clause contrary to *Samuel Johnson*, 135 S. Ct. at 2557-58, and the latter decision must control.

### III. CONCLUSION

For all of the foregoing reasons, and for the additional reasons stated in the PFRD, I propose to find that New Mexico armed robbery no longer qualifies as a violent felony under the ACCA, and thus, the Court may no longer rely on Defendant's prior conviction of this offense to enhance his sentence. Consequently, and notwithstanding my misgivings based on policy considerations described in the original PFRD, (Doc. 12 at 22-25), I recommend that the Court GRANT Defendant's Section 2255 Motion, VACATE his sentence, and RESENTENCE him without enhancement under the ACCA at the Court's earliest opportunity.

*Kirtan Khalsa*

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**