**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                                                                                    Civ. No. 16-501 MV/KK
                                                        (Cr. No. 02-2092 MV)

DAVID LOUIS KING,

      Defendant/Movant.

**ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

     THIS MATTER comes before the Court on Defendant/Movant David Louis King's ("Movant") Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) ("Section 2255 Motion"), filed May 26, 2016.  On December 1, 2016 and February 17, 2017, United States Magistrate Judge Kirtan Khalsa filed Proposed Findings and Recommended Disposition ("PFRD") and Supplemental Proposed Findings and Recommended Disposition ("Supplemental PFRD"), respectively, in which she recommended that the Court grant Movant's Section 2255 Motion, vacate his sentence, and resentence him without enhancement under the ACCA at the Court's earliest opportunity.  (Docs. 12, 15.)  The Government objected to the PFRD and Supplemental PFRD on December 15, 2016, February 6, 2017, and March 3, 2017.  (Docs. 13, 14, 17.)  Movant's Section 2255 Motion and the Government's objections are now before the Court.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     On November 21, 2002, the Government charged Movant by indictment with two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§

922(g)(1) and 924(a)(2).  (CR Doc. 1.[1])  The Court appointed attorney Kenneth Gleria to represent Movant, who pled not guilty to the charges against him on December 12, 2002.  (CR Docs. 5, 7.)  On January 30, 2003, the Court released Movant from custody pending trial.  (CR Docs. 16, 17.)

Movant pled guilty to Count I of the indictment pursuant to a plea agreement on July 15, 2003.  (CR Doc. 31.)  However, on August 26, 2003, the Government filed a notice that it intended to seek a minimum sentence of fifteen years' imprisonment pursuant to the ACCA, rather than a maximum sentence of ten years' imprisonment pursuant to 18 U.S.C. § 924(a)(2) as stated in the parties' plea agreement.  (CR Doc. 32.)  The Government identified three predicate convictions to support the enhanced sentence: a 1986 armed robbery conviction, a 1995 commercial burglary conviction, and a 1995 residential burglary conviction, all under New Mexico law.  (*Id.* at 2; Doc. 9-1 at 10 ¶ 26.)  In light of this new information, the Court permitted Movant to withdraw his guilty plea on September 25, 2003.  (CR Doc. 35.)  On October 8, 2003, the Government filed a superseding indictment to include charges that Movant's sentence should be enhanced under the ACCA.  (CR Doc. 37.)

Movant entered into a new plea agreement, and pled guilty to Count II of the superseding indictment, on February 18, 2004.  (CR Docs. 56, 57.)  In the new plea agreement, Movant acknowledged that he faced a minimum sentence of fifteen years' imprisonment under the ACCA.  (CR Doc. 56 at 2.)  However, on April 21, 2004, Movant filed objections to the Presentence Investigation Report, in which he argued that the Court should not enhance his sentence because his prior conviction for commercial burglary was not for a violent felony under the ACCA.  (CR Doc. 61.)  Rejecting this argument, the Court sentenced Movant to fifteen

---

[1] References to "CR Doc." are to the docket in Cr. No. 02-2092 MV (D.N.M.).

years' imprisonment at a hearing on May 26, 2004.  (CR Docs. 64, 83.)  The Court entered a judgment of conviction against Movant on the same date,[2] and subsequently dismissed the original indictment and Count I of the superseding indictment.  (CR Docs. 65, 67.)  On appeal, the Tenth Circuit affirmed the Court's use of Movant's prior commercial burglary conviction to enhance his sentence.  (CR Doc. 73.)

Movant has been in federal custody since July of 2004.  (Doc. 1 at 3.)  He filed the Section 2255 Motion presently before the Court on May 26, 2016, less than one year after the United States Supreme Court struck down a portion of the ACCA in *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015).[3]  (Doc. 1.)  The Government responded in opposition to the motion on August 8, 2016, and Movant filed a reply in support of it on August 30, 2016.  (Docs. 8, 10.)  In his motion, Movant asks the Court to reduce his sentence from fifteen years' to no more than ten years' imprisonment, which was the maximum sentence he faced without the ACCA enhancement, and order his immediate release from federal custody because he has already been imprisoned for more than ten years.  (Doc. 1 at 1.)  In support of this request, Movant argues that the enhancement of his sentence is no longer proper, because:  (1) the Court necessarily relied on the ACCA's "residual clause" to find that his prior armed robbery conviction was for a violent felony under the Act; and, (2) the *Samuel Johnson* decision struck down the residual clause as unconstitutionally vague.  (*Id.* at 4-5; Doc. 10 at 1-3.)

---

[2] The Court entered an amended judgment of conviction against Movant on June 22, 2004 to correct a clerical error. (CR Doc. 72.)

[3] The Court will refer to *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), as "*Samuel Johnson*," to distinguish it from *Johnson v. United States*, 559 U.S. 133 (2010), which the Court will refer to as "*Curtis Johnson*." Many courts refer to these cases as "*Johnson II*" and "*Johnson I*," respectively; however, those captions could suggest that the two decisions arise out of the same litigation or concern the same defendant, which they do not.

In its response in opposition to Movant's motion, the Government acknowledges that the Court likely relied on the ACCA's residual clause to find that Movant's prior armed robbery conviction was for a violent felony, and that this clause is no longer valid.  (Doc. 8 at 1-2.) However, the Government argues that the enhancement of Movant's sentence nevertheless remains proper because New Mexico armed robbery still qualifies as a violent felony under the ACCA's "elements clause," which *Samuel Johnson* left intact.  (*Id.* at 2-3.)

In her December 1, 2016 PFRD, Magistrate Judge Khalsa recommended that the Court grant Movant's Section 2255 Motion, and the Government filed Objections to Magistrate Judge's Proposed Findings and Recommended [Disposition] ("Objections") on December 15, 2016.  (Docs. 12, 13.)  Then, on January 4, 2017, the Tenth Circuit issued *United States v. Harris*, 844 F.3d 1260 (10th Cir. 2017), which caused the Government to modify its position in a Supplement to United States' Objections to Magistrate Judge's Proposed Findings and Recommended [Disposition] ("Supplement"), filed February 6, 2017.  (Doc. 14.)  Also after entry of Magistrate Judge Khalsa's PFRD, two district judges and three other magistrate judges in this District issued decisions or recommendations contrary to those in the PFRD.  (*See* Doc. 15 at 10-11.)  Thus, on February 17, 2017, Magistrate Judge Khalsa filed her Supplemental PFRD, in which she reexamined her original recommendation in light of *Harris*, 844 F.3d at 1260, the Government's Objections and Supplement, and the recent decisions of other judges in this District.  (Doc. 15.)  However, the Magistrate Judge ultimately declined to alter her original recommendation.  (*Id.* at 16.)  Movant responded to the Government's Supplement on February 25, 2017, and the Government filed Objections to Magistrate Judge's Supplemental Proposed Findings and Recommended [Disposition] ("Objections to Supplemental PFRD") on March 3, 2017.  (Docs. 16, 17.)

The Court has considered Movant's Motion, the Magistrate Judge's PFRD and Supplemental PFRD, and the Government's Objections, Supplement, and Objections to Supplemental PFRD, and has conducted a *de novo* review of the record in this case and the underlying criminal case.  Based on this review, and for the reasons set forth below, the Court finds that the Government's Objections, Supplement, and Objections to Supplemental PFRD are unfounded, the Magistrate Judge's PFRD and Supplemental PFRD should be adopted, and Movant's Section 2255 Motion should be granted.

## II.   ANALYSIS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  When resolving objections to a magistrate judge's proposal,

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit,

theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

The ACCA provides that a person who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or "serious drug offense" is subject to a minimum term of imprisonment of fifteen years.  18 U.S.C. § 924(e)(1).  Under the ACCA, the term "violent felony" means

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  Subpart (i) of this definition is known as the "elements clause" or "force clause"; the non-italicized portion of subpart (ii) is known as the "enumerated offenses clause"; and, the italicized portion of subpart (ii) is known as the "residual clause."  *Samuel Johnson*, 135 S. Ct. at 2556; *Harris*, 844 F.3d at 1263; *United States v. Fritts*, 841 F.3d 937, 939 (11th Cir. 2016); *United States v. Gardner*, 823 F.3d 793, 801-02 (4th Cir. 2016); *United States v. Priddy*, 808 F.3d 676, 683 (6th Cir. 2015).  In *Samuel Johnson*, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague, but left its enumerated offenses and elements clauses intact.[4]  135 S. Ct. at 2557, 2563.

To determine whether an offense is a violent felony under the ACCA, courts must generally apply the "categorical approach," which requires that they consider only the offense's statutory elements, and not the actual facts underlying the defendant's prior conviction.  *Harris*,

---

[4] In *Welch v. United States*, the Supreme Court held that *Samuel Johnson* announced a new substantive rule that applies retroactively on collateral review.  — U.S. —, 136 S. Ct. 1257, 1264-65 (2016).  Movant may therefore challenge the Court's enhancement of his sentence pursuant to the ACCA's residual clause by way of a motion under 28 U.S.C. § 2255.

844 F.3d at 1263; *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016); *Gardner*, 823

F.3d at 802; *United States v. Smith*, 652 F.3d 1244, 1246 (10th Cir. 2011).  Courts must presume

that a prior conviction "rested upon nothing more than the least of the acts criminalized" by the

state statute.  *Moncrieffe v. Holder*, — U.S. —, 133 S. Ct. 1678, 1684 (2013) (internal

punctuation marks omitted).  However, "in construing the minimum culpable conduct, such

conduct includes only that in which there is a realistic probability, not a theoretical possibility the

state statute would apply."  *Harris*, 844 F.3d at 1264 (quoting *Moncrieffe*, 133 S. Ct. at 1685).  In

other words,

> [t]o satisfy this categorical approach, it is not necessary that every conceivable
> factual offense covered by a statute fall within the ACCA.  Rather, the proper
> inquiry is whether the conduct encompassed by the elements of the offense, in the
> ordinary case, qualifies under the ACCA as a violent felony.

*Smith*, 652 F.3d at 1246 (citation omitted).  To identify the least culpable conduct a state statute

criminalizes in the ordinary case, courts look to "[d]ecisions from the state supreme court  . . .

supplemented by decisions from the intermediate-appellate courts."  *Harris*, 844 F.3d at 1264.

When a statute includes alternative elements that create distinct versions of a crime,

courts employ the "modified categorical approach."  *Gardner*, 823 F.3d at 802; *United States v.*

*Hood*, 774 F.3d 638, 645 (10th Cir. 2014); *see Mathis v. United States*, — U.S. —, 136 S. Ct.

2243, 2249 (2016) ("[T]his Court approved the 'modified categorical approach' for use with

statutes having multiple alternative elements.").  When using the modified categorical approach,

"a sentencing court looks to a limited class of documents (for example, the indictment, jury

instructions, or plea agreement and colloquy) to determine what crime, with what elements, a

defendant was convicted of."  *Mathis*, 136 S. Ct. at 2249; *Hood*, 774 F.3d at 645.  The court then

compares the elements of that crime, as the categorical approach commands, with the elements

of the relevant generic offense.  *Mathis*, 136 S. Ct. at 2249.  However, the modified categorical

approach does not apply to statutes "that enumerate[] various factual means of committing a single element." *Id.* at 2249, 2253-54.

> Here, Movant's statute of conviction provides that
>
> [r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.
>
> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M. Stat. Ann. § 30-16-2.

> This statutory language shows that armed robbery is not a distinct offense from robbery; the offense is robbery whether or not armed, and whether or not one is an accessory. 'Armed robbery' is a way to commit 'robbery' and, if done in that way, the penalty is greater but the basic offense remains robbery.

*New Mexico v. Roque*, 1977-NMCA-94, ¶ 8, 91 N.M. 7, 569 P.2d 417.  Thus, as stated in the Magistrate Judge's PFRD, to determine whether Movant's armed robbery conviction is a violent felony under the ACCA, the Court must analyze the elements of robbery, plus the additional element of commission of the offense "while armed with a deadly weapon."[5]  (Doc. 12 at 7); N.M. Stat. Ann. § 30-16-2.

Robbery and armed robbery are not included in the ACCA's enumerated offenses clause, and, as noted above, the Act's residual clause is no longer valid.  18 U.S.C. § 924(e)(2)(B)(ii); *Samuel Johnson*, 135 S. Ct. at 2557, 2563.  Thus, to constitute a violent felony under the ACCA, New Mexico armed robbery must satisfy the elements clause; in other words, it must

---

[5]  Although armed robbery is an aggravated form of robbery, robbery and armed robbery are two distinct offenses for purposes of determining whether they are violent felonies under the ACCA, because they entail different penalties.  *Mathis*, 136 S. Ct. at 2256.  However, the Court need not apply the modified categorical approach here, because the parties agree that Movant was convicted of armed robbery.  (Doc. 1 at 1-2; Doc. 8 at 1-2.)

categorically have "as an element the use, attempted use, or threatened use of physical force against the person of another."   18 U.S.C. § 924(e)(2)(B)(i).   As Magistrate Judge Khalsa observed, at first glance, New Mexico robbery, simple or armed, would seem to satisfy this requirement easily, because it consists of theft from the person or immediate control of another "by use or threatened use of force or violence."[6]   (Doc. 12 at 7); N.M. Stat. Ann. § 30-16-2. "The gist of the offense of robbery is *the use of force or intimidation*."   *New Mexico v. Bernal*, 2006-NMSC-50, ¶ 28, 140 N.M. 644, 146 P.3d 289 (emphasis added) (citation omitted).   In short, the statute's plain language suggests that New Mexico robbery, and thus also the aggravated offense of armed robbery, fall squarely within the scope of the ACCA's elements clause.

However, as the Magistrate Judge noted, the required analysis is "not so straightforward in the sometimes counterintuitive legal landscape recent federal jurisprudence has created." (Doc. 12 at 8.)   The meaning of the term "physical force" in the ACCA's elements clause is a question of federal law, and the United States Supreme Court has held that "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person."   *Curtis Johnson*, 559 U.S. at 138, 140 (emphasis in original); *Hood*, 774 F.3d at 645; *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010).   The Supreme Court therefore concluded that the force element of Florida battery, which can be satisfied by "the most nominal contact, such as a tap on the shoulder without consent," did not categorically rise to the level of physical force within the meaning of the ACCA.   *Curtis Johnson*, 559 U.S. at 138-40. Accordingly, although the degree of force necessary to inflict pain "might consist" of no more

---

[6] "[T]he words 'or violence'" in Section 30-16-2 "refer to the unwarranted exercise of force and do not substantively state an alternative means of committing the offense."   *New Mexico v. Curley*, 1997-NMCA-38, ¶ 4, 123 N.M. 295, 939 P.2d 1103; *see also New Mexico v. Fuentes*, 1994-NMCA-158, ¶ 14, 119 N.M. 104, 888 P.2d 986 (terms "force" and "violence" are used synonymously in New Mexico robbery statute).

than "a slap in the face, for example," it certainly consists of something more than mere offensive touching.[7]  *Id.* at 143; *Harris*, 844 F.3d at 1265.

To decide whether New Mexico armed robbery is a violent felony under the ACCA's elements clause, then, this Court must look to state law to determine whether the minimum culpable conduct allowing for a conviction in the ordinary case necessarily includes "physical force" as *Curtis Johnson* defined it.  In other words, does the "force or violence" element of New Mexico's robbery statute categorically require the use of force capable of causing physical pain or injury to another person?[8]

As Magistrate Judge Khalsa discussed in her Supplemental PFRD, the Tenth Circuit addressed a similar question in *Harris*, and its decision must inform the Court's reasoning.  (Doc. 15 at 3-9.)  In *Harris*, the Tenth Circuit held that Colorado robbery categorically has as an

---

[7] The Court notes that in *United States v. Castleman*, the Supreme Court left unresolved whether acts such as "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" rise to the level of "violent force, under [*Curtis*] *Johnson*'s definition of that phrase."  — U.S. —, 134 S. Ct. 1405, 1411-12, 1414 (2014); *but see id.* at 1421-22 (Scalia, J., concurring) ("[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" bear no "real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury" within the meaning of *Curtis Johnson*) *and Harris*, 844 F.3d at 1265 n.1 (*Castleman* did not list "pushing, grabbing, shoving, slapping, and hitting" as non-violent force under *Curtis Johnson*).

[8] As the Magistrate Judge observed, New Mexico robbery can also be committed by "intimidation," that is, by the "threatened use of force."  (Doc. 12 at 9 n.5 (quoting *Bernal*, 2006-NMSC-50 at ¶ 28, 140 N.M. 644, 146 P.3d 289; N.M. Stat. Ann. § 30-16-2).)  Movant makes no argument regarding whether intimidation necessarily includes the threatened use of *Curtis Johnson* physical force; and, neither party asks the Court to use the modified categorical approach to determine whether Movant was convicted of armed robbery by the use of force, or by the threat of it. (*See generally* Docs. 1, 8, 10, 13, 14, 16, 17.)  Also the record, which does not include the indictment or plea agreement and colloquy from Movant's armed robbery case, provides the Court with no basis on which to analyze this issue *sua sponte*.  *Mathis*, 136 S. Ct. at 2249.  Thus, the Court will not separately analyze this alternative means or element.  However, it is worth noting that robbery or armed robbery by intimidation, as opposed to robbery or armed robbery by force, may be a distinct offense that has as an element the threatened use of *Curtis Johnson* physical force.  *See Fuentes*, 1994-NMCA-158 at ¶ 12, 119 N.M. 104, 888 P.2d 986 ("[R]obbery can be presented under alternative theories:  (1) robbery by threat of force; (2) robbery by use of force; (3) armed robbery by threat of force; or (4) armed robbery by use of force."); *New Mexico v. Sanchez*, 1967-NMCA-9, ¶ 12, 78 N.M. 284, 430 P.2d 781 (to support robbery conviction, threatened use of force must be "such as to cause a reasonable man to apprehend danger and that he could be reasonably expected to give up his property in order to protect himself"); *see also United States v. Doctor*, 842 F.3d 306, 309 (4th Cir. 2016) (South Carolina robbery by means of intimidation is violent felony under ACCA's elements clause because, to satisfy element of intimidation, "a robbery victim must feel a threat of bodily harm based on the defendant's acts," and "[t]here is no meaningful difference between a victim feeling a threat of bodily harm and feeling a threat of physical pain or injury") (internal quotation marks and citation omitted).

element the actual, attempted, or threatened use of physical force against the person of another, and so satisfies the ACCA's elements clause.  844 F.3d at 1270.  The *Harris* court relied on a Colorado Supreme Court decision which held that Colorado robbery "tracks the elements of common law robbery," and which emphasized the "violent nature of the taking" as the gravamen of the offense.  *Id.* at 1266-67 (quoting *Colorado v. Borghesi*, 66 P.3d 93, 99-101 (Colo. 2003)). The *Harris* court rejected the defendant's argument that the Colorado Supreme Court "might not have meant 'violent' when it said 'violent,'" and concluded that "robbery in Colorado requires a 'violent taking,' which we believe is consistent with the physical force required by the ACCA's elements clause."  *Id.* at 1266-67.  The *Harris* court further concluded that Colorado robbery by "threats or intimidation" requires the threatened use of *Curtis Johnson* physical force, rejecting the defendant's argument that the threatened use of force could be against the property, rather than the person, of another.  *Id.* at 1268-70.

The Court agrees with the Magistrate Judge that the *Harris* court made two points of particular relevance here.  (Doc. 15 at 4.)  First, the *Harris* court held that, because the Colorado Court of Appeals' decision in *Colorado v. Davis*, 935 P.2d 79 (Colo. App. 1996), predated the Colorado Supreme Court's decision in *Borghesi*, *Davis* was "not controlling . . . [t]o the extent [it] suggests a Colorado robbery conviction can be based on less than violent force."  *Harris*, 844 F.3d at 1267.  Thus, and notwithstanding the Government's arguments to the contrary in this case, (Doc. 17 at 4-5), in *Harris* the Tenth Circuit intimated that the force used in *Davis* was "less than violent force."  844 F.3d at 1267.  The *Davis* court, in turn, held that Colorado robbery "includes the snatching of an object attached to the person of another if force is used to tear or break the attachment."  935 P.2d at 84-85.  As such, the *Davis* court affirmed the defendant's robbery conviction where the defendant "pulled [a] purse from the victim's arm with sufficient

force to break the strap." *Id.* at 86.  The *Harris* decision therefore suggests that the force used in a *Davis*-like purse-snatching does not rise to the level of *Curtis Johnson* physical force.  844 F.3d at 1267.

Magistrate Judge Khalsa concluded, and the Court agrees, that New Mexico law regarding purse-snatchings is similar to *Davis*, but more extensive and authoritative.  (Doc. 15 at 5.)  In 1976, the New Mexico Supreme Court held that

> [t]he question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion. . . .  Assuming that the docketing statement, which was filed by the defendant-respondent, presents the facts accurately, and viewing these facts in the light most favorable to the State, we conclude that the evidence supported the verdict of the jury that the snatching of the purse was accompanied by force sufficient to convert the crime from larceny to robbery.

*New Mexico v. Clokey*, 1976-NMSC-35, ¶ 3, 89 N.M. 453, 553 P.2d 1260.  The docketing statement on which the New Mexico Supreme Court relied described the facts as follows:

> [t]he complaining witness was walking toward the [d]efendant and was carrying a purse under her left arm.  The purse was not fastened to her person, nor was it in the grasp of her hand.  The [d]efendant allegedly ran toward the complaining witness and with his left hand pushed the purse through the woman's arm, grabbed the purse and ran.  It is alleged that in so doing the [d]efendant touched the inside of the woman's arm, causing the woman to stumble.  The woman was in her seventies and tottered unsteadily when she walked.  There was no resistance offered by the woman whose purse was taken; there was no struggle for the purse; and the [d]efendant, in the complaining witness's words, "snatched" the purse in one continuous motion and ran.

*New Mexico v. Clokey*, No. 2479, Docketing Statement at 1-2 (N.M. App. filed Mar. 22, 1976).

Similarly, in *Curley*, the New Mexico Court of Appeals held that the jury could find a purse snatching to constitute robbery if it determined that the defendant "shoved the victim to help himself relieve her of [her] purse."  1997-NMCA-38 at ¶ 15, 123 N.M. 295, 939 P.2d 1103. The *Curley* victim described the force used against her as "kind of a shove," as a result of which

she "kind of leaned—was pushed—toward [her] daughter."  *Id.* at ¶ 3, 123 N.M. 295, 939 P.2d 1103.  Finally, the New Mexico Court of Appeals in *New Mexico v. Verdugo* held that there was sufficient evidence to sustain the defendant's robbery conviction where he "grabbed" the victim's purse from her arm, the victim "struggled to retain control" of it, and "the strap eventually broke."  2007-NMCA-95, ¶ 27, 142 N.M. 267, 164 P.3d 966, *cert. granted*, 142 N.M. 330 (N.M. 2007), *cert. quashed*, 145 N.M. 532 (N.M. 2008).  At trial, the victim testified that she struggled to hold onto her purse for "[m]aybe a couple of seconds" before the purse strap broke.  *New Mexico v. Verdugo*, COA No. 25,534, Partial Transcript of Proceedings at TR-94 (N.M. App. filed Sept. 28, 2005).

As noted by the Magistrate Judge and above, the Tenth Circuit in *Harris* held that *Davis*, a Colorado Court of Appeals decision, was not controlling to the extent it was inconsistent with *Borghesi*, a later Colorado Supreme Court decision.  (Doc. 15 at 6); 844 F.3d at 1267.  However, the New Mexico Court of Appeals' purse-snatching decisions in *Curley* and *Verdugo* are entirely consistent with the New Mexico Supreme Court's prior purse-snatching decision in *Clokey*.  The *Verdugo* decision is also consistent with and post-dates the New Mexico Supreme Court's decision in *Bernal,* 2006-NMSC-50, 140 N.M. 644, 146 P.3d 289.  Although the *Bernal* court stated that, "[s]ince the robbery statute is designed to protect citizens from violence, . . . the legislature intended to allow for separate charges for each individual against whom violence or the threat of violence is separately used" in the course of a taking, it used the terms "force" and "violence" interchangeably consistent with *Curley* and *Fuentes*, and made no attempt to address the type or quantum of force this element requires, or to revisit *Clokey* and its progeny.[9]  *Id.* at ¶¶

---

[9] The *Bernal* court did cite to *United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993), in which the Tenth Circuit held that New Mexico robbery is a violent felony under the ACCA.  2006-NMSC-50 at ¶ 28, 140 N.M. 644, 146 P.3d 289.  However, as further discussed below, both *Bernal* and *Lujan* were decided well before *Curtis Johnson*, and

19, 28, 31. Thus, unlike the *Harris* court in its treatment of *Davis*, here there is no basis on which to discount *Clokey*, *Curley*, and *Verdugo*. (Doc. 15 at 7); *Harris*, 844 F.3d at 1264, 1267. And, as the *Harris* court implied and the Magistrate Judge proposed, this Court concludes that the force used in purse-snatching robberies does not categorically rise to the level of *Curtis Johnson* physical force. (Doc. 12 at 10-11; Doc. 15 at 7.)

The Court agrees with Magistrate Judge Khalsa that *Harris*' second instructive point is how the court distinguished the matter before it from *Gardner*, 823 F.3d at 793. (Doc. 15 at 7); *Harris*, 844 F.3d at 1267-68 & n.6. In *Gardner*, the Fourth Circuit held that North Carolina robbery is not a violent felony under the ACCA's elements clause. 823 F.3d at 803-04. The *Gardner* court reasoned that "the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person," where "the degree of force used [to commit a robbery] is immaterial, so long as it is sufficient to compel the victim to part with his property." *Id.* (internal quotation marks and citations omitted). Distinguishing *Gardner*, the *Harris* court suggested that North Carolina robbery was not a violent felony under the ACCA's elements clause because, unlike Colorado robbery, it did not "remain[] committed to the common law definition of robbery" in this respect.[10] 844 F.3d at 1267-68 & n.6.

As the Magistrate Judge pointed out in her Supplemental PFRD, New Mexico law is virtually identical to the North Carolina law the Tenth Circuit distinguished from Colorado law in *Harris*. (Doc. 15 at 7-8.) As long ago as 1967, the New Mexico Court of Appeals held that,

---

thus did not consider whether New Mexico robbery categorically has as an element the actual, attempted, or threatened use of force capable of causing physical pain or injury to another person.

[10] *Harris* also distinguished *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016) (Massachusetts armed robbery), *United States v. Bell*, 840 F.3d 963 (8th Cir. 2016) (Missouri robbery), and *United States v. Eason*, 829 F.3d 633 (8th Cir. 2016) (Arkansas robbery), for similar reasons. 844 F.3d at 1267-68 & n.6.

"[w]here [robbery by] force is charged, *the issue is not how much force was used*, but whether the force was sufficient to compel the victim to part with his property." *New Mexico v. Sanchez*, 1967-NMCA-9, ¶ 11, 78 N.M. 284, 430 P.2d 781 (emphasis added).   Six years later, the appellate court reiterated this point:

> [t]he use or threatened use of force must be the lever by which the thing of value is separated from the victim. *The amount or degree of force is not the determinative factor.*  Evidence of jostling or causing the victim to fall as property is taken is a sufficient showing to establish the use of force.

*New Mexico v. Martinez,* 1973-NMCA-120, ¶ 4, 85 N.M. 468, 513 P.2d 402 (emphasis added) (internal ellipses and citations omitted).  In *Curley*, the appellate court extended this reasoning to property "attached" to the victim, holding that the force element of robbery is satisfied whenever the defendant removes property from the victim with sufficient force to overcome some type of resistance, including "the resistance of attachment."  *Curley*, 1997-NMCA-38 at ¶¶ 4, 7, 10, 123 N.M. 295, 939 P.2d 1103.  Thus,

> *when property is attached to the person or clothing of a victim so as to cause resistance, any taking is a robbery*, and not larceny, because the lever that causes the victim to part with the property is the force that is applied to break that resistance; however, when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery.  In our cases where we have not found sufficient force to be involved, the victim did not resist the property being taken from his person.[11]

*Id.* at ¶¶ 6, 7, 123 N.M. 295, 939 P.2d 1103 (emphasis added).

---

[11] The *Curley* court described as "dictum" language in *Sanchez* and *Martinez* to the effect that "even a slight amount of force . . . is sufficient" to satisfy the force element of New Mexico robbery.  1997-NMCA-38 at ¶ 4, 123 N.M. 295, 939 P.2d 1103.  Nevertheless, the court harmonized this language with other appellate decisions to derive the rule of law it applied.  *Id.* at ¶¶ 4, 6, 7.  Moreover, as previously discussed, the *quantum* of force is not determinative under New Mexico robbery law; what is determinative is whether the force used is sufficient to overcome some kind of resistance.  *Id.* at ¶¶ 4, 7, 10; *Sanchez*, 1967-NMCA-9 at ¶ 11, 78 N.M. 284, 430 P.2d 781; *Martinez,* 1973-NMCA-120 at ¶ 4, 85 N.M. 468, 513 P.2d 402.  If the victim's resistance is slight, then logically the force used to overcome it may also be slight, yet still sufficient to satisfy robbery's force element.  New Mexico's line of purse-snatching cases illustrates this point, and shows that criminal defendants in New Mexico have been convicted of robbery for using less than *Curtis Johnson* physical force.

Thus, for almost fifty years, the law in New Mexico has been that robbery requires the use of, not a particular quantum of force, but rather sufficient force to overcome some kind of resistance.  This force element is consistent with the force element of North Carolina robbery, which *Gardner* found not to rise to the level of *Curtis Johnson* force, and which *Harris* found to depart from the common law force element of Colorado robbery.  Thus, the Court agrees with the Magistrate Judge that, although the *Harris* court found that Colorado robbery satisfies the ACCA's elements clause, its reasoning supports the conclusion that New Mexico robbery does not.  (Doc. 15 at 9.)

In its Objections to the Magistrate Judge's Supplemental PFRD, the Government argues at some length that New Mexico robbery "is common law robbery," and "[u]nder the guidance articulated in *Harris*, New Mexico robbery is therefore a crime of violence for purposes of the ACCA."  (Doc. 17 at 5-8.)  In so arguing, the Government ignores the *Harris* court's treatment of *Gardner*.  844 F.3d at 1267-68 & n.6.  If the force element of North Carolina robbery departs from the common law, as *Harris* suggests, then the force element of New Mexico robbery does as well.  *Id.*  The Government's argument is also overly simplistic.  For obvious reasons, the historical common law did not address whether robbery's force element categorically requires *Curtis Johnson* physical force.  Also, the application of robbery's force element to specific factual scenarios differs from state to state, even for states whose courts interpret their statutes in light of the common law.  And, as the foregoing analysis of New Mexico's purse-snatching cases shows, how state courts actually apply a robbery statute to specific facts matters under *Curtis Johnson*.  The Government cannot erase the New Mexico Supreme Court's and the New Mexico Court of Appeals' decisions finding that something less than *Curtis Johnson* force satisfies the

force element of New Mexico robbery simply by labeling the offense "common law robbery." The Government's arguments on this point are not persuasive.

The Court notes the widely varying decisions reached by other federal appellate courts faced with deciding whether a particular state's robbery statute necessarily has as an element the actual, attempted, or threatened use of *Curtis Johnson* physical force, and so is a violent felony under the elements clause. A number of federal appellate courts have concluded that robbery is *not* a violent felony under the elements clause. *See, e.g.*, *Gardner,* 823 F.3d at 803-04; *Bell*, 840 F.3d at 965-67 (Missouri robbery is not a crime of violence under U.S.S.G. § 4B1.2's elements clause[12] because "[t]he amount of physical force required for a person to be convicted . . . does not . . . necessarily rise to the level of physical force required for a crime of violence," where defendant "can be convicted of . . . robbery when he has physical contact with a victim but does not necessarily cause physical pain or injury") (emphasis and internal quotation marks omitted) *and id.* at 969-70 (Gruender, C.J., dissenting) ("consistent line" of Missouri robbery cases require "force capable of preventing or overcoming resistance"); *Eason*, 829 F.3d at 641-42 (Arkansas robbery is not a violent felony under ACCA's elements clause because "the degree of physical force required to commit robbery in Arkansas" does not "rise[] to the level of [*Curtis Johnson*] physical force," where force element of crime requires "some injury . . . some struggle . . . or some force used in order to take" property); *cf. United States v. Castro-Vazquez*, 802 F.3d 28, 37-38 (1st Cir. 2015) (remanding to district court to determine whether force required for Puerto Rico robbery rises to required level of physical force under U.S.S.G. § 4B1.2's elements

---

[12] The Tenth Circuit has "consistently applied the same analysis" to the ACCA and U.S.S.G. § 4B1.2 where, as here, "the clauses are virtually identical." *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016)). However, it is worth noting that the Supreme Court has recently ruled that the advisory United States Sentencing Guidelines are not subject to void-for-vagueness challenges, and thus Section 4B1.2's residual clause is not void for vagueness. *Beckles v. United States*, — U.S. —, — S. Ct. —, 2017 WL 855781 at *9 (Mar. 6, 2017). As such, even if an offense does not qualify as a violent felony or crime of violence under the elements clause of either the ACCA or Section 4B1.2, it could still qualify as a crime of violence under Section 4B1.2's residual clause.

clause, where defendant argued that robbery by "violence is defined under Puerto Rico law to include the slightest use of force"); *United States v. Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016) (government conceded Maryland common law robbery is not a violent felony under ACCA's elements clause, where force element of crime is satisfied "so long as the victim resisted the taking and her resistance had been overcome") (internal quotation marks and citation omitted).

Conversely, several other federal appellate courts have held that robbery *is* a violent felony under the elements clause. *See, e.g., Fritts*, 841 F.3d at 943 (Florida robbery *is* a violent felony under the ACCA's elements clause, because, *inter alia*, the force element of the crime "requires both resistance by the victim and physical force by the offender that overcomes that resistance") (internal quotation marks and citation omitted); *United States v. Seabrooks*, 839 F.3d 1326, 1343-44 (11th Cir. 2016) (same); *Duncan*, 833 F.3d at 752, 756 (Indiana robbery is a violent felony under ACCA's elements clause; "*Curtis Johnson* did not hold that 'physical force' under the ACCA means a level of force likely to cause serious injury"); *Priddy*, 808 F.3d at 686 (Tennessee robbery is a violent felony under ACCA's elements clause, where force element of crime requires "physical force unlawfully exercised so as to injure, damage or abuse").

To add to the complexity of the issue, some years before *Curtis Johnson*, the Tenth Circuit held that New Mexico robbery is "clearly [a] violent felon[y] under the [ACCA]" because it "contains the required element of force." *Lujan*, 9 F.3d at 892. A Tenth Circuit panel decision binds this Court "absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Killion*, 7 F.3d 927, 930 (10th Cir. 1993). However, the Court agrees with Magistrate Judge Khalsa that here, *Lujan* does not bind the Court, because *Curtis Johnson* is a "superseding contrary decision by the Supreme Court," requiring a new analysis and, ultimately, an opposite result. *Id.*; (Doc. 12 at 14-15); *see also, e.g., Eason*, 829

18

F.3d at 641 (reevaluating Eighth Circuit precedent regarding application of ACCA to Arkansas robbery in light of *Curtis Johnson*).

The Magistrate Judge also noted three other pre-*Harris* Tenth Circuit decisions addressing issues similar to those presented here, in which the Tenth Circuit arrived at a different result. (Doc. 12 at 15-16.) First, in *United States v. Aguilar-Ramos*, an unpublished opinion, the Tenth Circuit held that California robbery "by force" is a crime of violence under U.S.S.G. § 2L1.2. 645 F. App'x 777, 778-79 (10th Cir. 2016).[13] However, the Tenth Circuit so held because the commentary to U.S.S.G. § 2L1.2 specifically lists robbery as a crime of violence; in contrast, the ACCA does not list robbery as a violent felony. *Id.* at 778-79. Likewise, in *United States v. Castillo*, the Tenth Circuit held that California robbery "by fear" is a crime of violence under U.S.S.G. § 2L1.2, because it corresponds to generic robbery and extortion, and the guideline's commentary lists both of these offenses as crimes of violence. 811 F.3d 342, 346-47 (10th Cir. 2015). Again, in contrast, the ACCA does not include robbery in its enumerated clause.

Finally, in *United States v. Cherry*, another unpublished decision, the Tenth Circuit held that Oklahoma robbery "by force and fear" is a violent felony under the ACCA's elements clause. 641 F. App'x 829, 831, 833 (10th Cir. 2016). In so ruling, however, the Tenth Circuit did not discuss whether the force element of the offense categorically requires the actual, attempted, or threatened use of force capable of causing physical pain or injury to another, and therefore rises to the level of *Curtis Johnson* physical force. *See generally id.* In fact, the decision includes no discussion at all regarding either *Curtis Johnson* or the degree of force the Oklahoma robbery statute requires, and thus, unlike *Harris*, provides this Court with no guidance

---

[13] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

regarding how the Tenth Circuit might apply *Curtis Johnson* to New Mexico robbery.  *Id.*  In short, the Court agrees with Magistrate Judge Khalsa that the foregoing Tenth Circuit decisions are materially distinguishable and provide no basis for altering the Court's conclusion that New Mexico robbery does not satisfy the ACCA's elements clause.  (Doc. 12 at 16.)

The Government has also argued that New Mexico *armed* robbery is a violent felony under the ACCA's elements clause even if New Mexico simple robbery is not, because armed robbery has as an element the use of a deadly weapon, and thus, the actual, attempted, or threatened use of *Curtis Johnson* physical force.  (Doc. 8 at 2-3.)  However, as the Magistrate Judge has explained, this argument fails because it is based on a false premise.  (Doc. 12 at 16; Doc. 15 at 11-13.)  New Mexico's armed robbery statute criminalizes robberies committed "while armed with a deadly weapon."  N.M. Stat. Ann. § 30-16-2.  Upon careful consideration of the state law discussed below, the Court agrees with Magistrate Judge Khalsa that this element requires the possession, but not necessarily the use, of a deadly weapon; and, the added element of possession of a deadly weapon is not enough to bring New Mexico robbery within the scope of the ACCA's elements clause.  (Doc. 12 at 16-22; Doc. 15 at 11-15.)

The New Mexico Court of Appeals has consistently interpreted the phrase "armed with a deadly weapon" to mean mere possession of a deadly weapon, and not necessarily its use.[14]  The decision most on point is *New Mexico v. Duran*, 1977-NMCA-99, 91 N.M. 38, 570 P.2d 39, in

---

[14] In armed robbery prosecutions involving an object that is not a statutorily enumerated deadly weapon, but rather is a deadly weapon only because of its "character and manner of use," New Mexico courts do require proof that the object was used as a "weapon with which dangerous wounds can be inflicted."  *New Mexico v. Fernandez*, 2007-NMCA-91, ¶ 7, 142 N.M. 231, 164 P.3d 112.  However, this requirement does not apply to objects statutorily enumerated as deadly weapons, including loaded and unloaded firearms.  *Id.* at ¶¶ 6-7 (quoting N.M. Stat. Ann. § 30-1-12(B)).  Also, in *Fuentes*, the New Mexico Court of Appeals stated that armed robbery "requires the elements of robbery plus the use of a deadly weapon."  1994-NMCA-158 at ¶ 8, 119 N.M. 104, 888 P.2d 986.  However, this statement is unnecessary to the *Fuentes* decision, and the case cited in support of it is inapposite.

which the defendant was convicted of armed robbery, and his sentence enhanced for use of a firearm pursuant to Section 31-18-16 of the New Mexico Statutes Annotated.[15]  In *Duran*,

> [t]he jury was instructed that an element of the crime was that defendant was "armed" with a firearm.  However, there is no separate finding of fact that a firearm was "used"; no special interrogatory was submitted to the jury.  [The defendant] assert[ed] that absent such a separate finding, the enhanced sentence for use of a firearm should not have been imposed.

1977-NMCA-99 at ¶ 7, 91 N.M. 38, 570 P.2d 39.   The prosecution countered that the jury instructions "required the jury to determine that [the] defendant was armed with a firearm before finding him guilty of armed robbery," and that "the finding of guilt necessarily determined that [the] defendant used a firearm."  *Id.* at ¶ 9, 91 N.M. 38, 570 P.2d 39.   Critically, the *Duran* court rejected the prosecution's argument because it "equates 'armed with a firearm' with 'use of a firearm.'  *That is not necessarily true.*"  *Id.* (emphasis added).   The court therefore affirmed the defendant's conviction for armed robbery, *i.e.*, robbery while armed with a firearm, but vacated his sentence enhancement for use of that firearm during the robbery.  *Id.*  The import of *Duran* is clear:  although one who uses a weapon is necessarily armed, one can be "armed with" a weapon under New Mexico law without using it.[16]  Moreover, the New Mexico legislature has not changed the terminology of Section 30-16-2 in the nearly four decades since the *Duran* court interpreted the term "armed with" to mean possession, and not necessarily use, which strongly suggests that this interpretation comports with legislative intent.

The Court agrees with the Magistrate Judge that New Mexico Court of Appeals' decisions interpreting the phrase "armed with a deadly weapon" in the context of aggravated

---

[15] Section 31-18-16 provides that when a factfinder determines "that a firearm was used in the commission of a noncapital felony," the defendant's sentence "shall be increased by one year" for a first offense, and three years for second and subsequent offenses.  N.M. Stat. Ann. § 31-18-16(A), (B).  When *Duran* was decided, this enhancement was codified at N.M. Stat. Ann. § 40A-29-3.1.  *See Duran*, 1977-NMCA-99 at ¶ 6, 91 N.M. 38, 570 P.2d 39.

[16] That this determination was not the only reason for the *Duran* court's ruling, or even the predominant one, does not make it obiter dictum, as the Government claims.  1977-NMCA-99 at ¶ 9, 91 N.M. 38, 570 P.2d 39; (*see* Doc. 13 at 7-8.)

burglary reinforce the point.  (Doc. 12 at 18); *see New Mexico v. Anderson*, 2001-NMCA-27, ¶ 21, 130 N.M. 295, 24 P.3d 327 ("Some statutes aggravate a predicate crime when the perpetrator is *armed with a deadly weapon*.") (emphasis in original) (citing N.M. Stat. Ann. § 30-16-2 (robbery) *and* N.M. Stat. Ann. § 30-16-4 (aggravated burglary)).  For example, in *New Mexico v. Luna*, the court observed that "there is virtually no difference between being in possession of a deadly weapon and being armed with a deadly weapon."  1982-NMCA-150, ¶ 9, 99 N.M. 76, 653 P.2d 1222 (citation omitted).  "Clearly, by enhancing the penalty for burglary while armed with a deadly weapon, the legislature intended to deter potential criminals from the *use or possession* of firearms and which escalate the possibility of violence."  *Id.* at ¶ 11, 99 N.M. 76, 653 P.2d 1222 (emphasis added).  In *New Mexico v. Padilla*, the court elaborated on this point, holding that the phrase "armed with a deadly weapon" includes a "deadly weapon which is easily accessible and readily available for use during the commission of the burglary whether or not it is actually on the person of the accused."  1996-NMCA-72, ¶¶ 10-11, 122 N.M. 92, 920 P.2d 1046 (internal quotation marks and citations omitted).

As Magistrate Judge Khalsa pointed out in her PFRD, and as New Mexico's firearm enhancement statute illustrates, the New Mexico legislature is fully capable of employing the term "use" when it wishes to penalize the use of, as opposed to being "armed with," a deadly weapon.  (Doc. 12 at 18-19); *compare* N.M. Stat. Ann. § 31-18-16 (providing for sentence enhancement where "firearm was used") *with* N.M. Stat. Ann. § 30-16-2 (defining armed robbery as robbery "while armed with a deadly weapon") *and* N.M. Stat. Ann. § 30-16-4(A) (defining aggravated burglary as burglary where the perpetrator "is armed with a deadly weapon").  In *New Mexico v. Trujillo*, the New Mexico Court of Appeals elaborated on the distinction the *Duran* court made between "use" and "armed with" in interpreting the firearm

enhancement statute.   1978-NMCA-41, 91 N.M. 641, 578 P.2d 342.   Quoting the California

courts at some length, the *Trujillo* court observed that

> [b]y employing the term "uses" instead of "while armed" the Legislature requires
> something more than merely being armed. . . .   The intentional firing of the gun is
> use of the firearm.   The display of the gun in a menacing manner as a means of
> accomplishing a robbery or the employment of the gun to strike or "pistol whip"
> the victim is certainly "use" of the gun in the commonly accepted definition of
> that term.

*Id.* at ¶¶ 12-13, 91 N.M. 641, 578 P.2d 342.   The *Trujillo* court went on to observe that,

"[s]imilarly to the California courts, we have distinguished between armed with a firearm and

use of a firearm."   *Id.* at ¶ 14, 91 N.M. 641, 578 P.2d 342; *see also, e.g.*, *New Mexico v.

Chouinard*, 1979-NMCA-145, ¶¶ 5-6, 93 N.M. 634, 603 P.2d 744 (New Mexico's firearm

enhancement provision requires "use" of firearm, while its armed robbery statute requires

"merely being armed" with a deadly weapon; "[t]he use of a firearm is something beyond mere

possession of it," and "[b]y employing the term 'uses' instead of 'while armed' the Legislature

requires something more than merely being armed").

In arguing to the contrary, the Government relies heavily on the New Mexico Court of

Appeals' decision in *New Mexico v. Hamilton*, 2000-NMCA-63, 129 N.M. 321, 6 P.3d 1043.

(Doc. 8 at 2-3.)   The defendant in *Hamilton* kicked in the victim's door, threatened to slash her

throat, found a handgun in her apartment and took it, told her to give him money, took a twenty

dollar bill from her purse, fired the gun at the couch on which she was sitting, and left.   *Id.* at ¶¶

3-4, 9, 129 N.M. 321, 6 P.3d 1043.   On this evidence, the *Hamilton* court was required to decide

whether the theft of the gun during the robbery supported aggravating the offense from simple to

armed robbery.   The court ultimately found that it did, because the defendant was armed at the

time he used force or threatened force to separate the victim from her money, *i.e.*, before the

robbery was complete.   *Id.* at ¶ 13, 129 N.M. 321, 6 P.3d 1043.

It is in this context that the court stated:

the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed 'while' committing the robbery is highly fact sensitive.  When the defendant acquires the weapon and how he uses it after its acquisition are paramount.

*Id.* at ¶ 12, 129 N.M. 321, 6 P.3d 1043.  The Government reads this excerpt to mean that armed robbery always requires the use of a deadly weapon.  (*See* Doc. 13 at 5.)  However, the *Hamilton* court went on to clarify that "[p]ossession of a dangerous weapon, rather than its use, is the essential element of armed robbery."  2000-NMCA-63 at ¶ 13, 129 N.M. 321, 6 P.3d 1043 (quoting *Massachusetts v. Goldman*, 367 N.E.2d 1181, 1182 (Mass. App. Ct. 1977)).  If *Hamilton* meant what the Government says, then the court would not have quoted *Goldman* for exactly the opposite proposition.[17]

On the contrary, as the Magistrate Judge explained, it is both more internally consistent, and more logical based on the facts presented, to read *Hamilton* as standing for the narrow proposition that, when a defendant steals a deadly weapon during a robbery, the possession of that stolen weapon may be used to elevate the offense from simple to armed robbery if the robber subsequently arms himself with it as a way of completing the robbery, rather than merely possessing the weapon as the bounty of his crime.  (Doc. 15 at 13.)  In *Hamilton*, the defendant committed armed robbery when he stole a gun from the victim's home, and then "used the handgun . . . to bolster his renewed demands . . . for [her] money."  2000-NMCA-63 at ¶ 13, 129 N.M. 321, 6 P.3d 1043.  On those facts, "[w]hen the defendant acquire[d] the weapon" *and* "how

---

[17] The Court agrees with the Magistrate Judge that the Government's reliance on the Committee Commentary to the New Mexico Uniform Jury Instruction on armed robbery is similarly flawed.  (Doc. 15 at 12 n.8; *see* Doc. 13 at 6 & n.4.)  Although the commentary does state that "[a]rmed robbery is an aggravated form of robbery by use of a deadly weapon," it immediately adds that "[s]ome courts indicate that being armed means only that the defendant has the ability to inflict an injury by having the weapon in his possession, not that the weapon is exhibited.  Where the jury may find the absence of a deadly weapon, it should be instructed on simple robbery as a lesser included offense."  N.M. U.J.I. 14-1621, Committee Commentary (citations omitted).  Thus, at best, the commentary is ambiguous regarding whether use or mere possession is required.

he use[d] it after its acquisition" were indeed "paramount," because he used the stolen gun to complete the robbery, thereby converting it from mere loot he had stolen to a weapon with which he was armed, *i.e.*, that he had easily accessible and readily available for use.  *Id.* at ¶¶ 10, 12, 129 N.M. 321, 6 P.3d 1043; *cf. Padilla*, 1996-NMCA-72 at ¶¶ 9-11, 122 N.M. 92, 920 P.2d 1046.  However, the *Hamilton* court expressly limited its "highly fact sensitive" inquiry to "the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed 'while' committing the robbery."[18]  2000-NMCA-063 at ¶ 12, 129 N.M. 321, 6 P.3d 1043.  To read *Hamilton* as requiring courts to apply this inquiry to every armed robbery case contravenes its express quotation of *Goldman*, and ignores the exceptional factual circumstances out of which it arose.  For all of the above reasons, and consistent with ordinary usage, the Court concludes that to commit robbery "while armed with a deadly weapon" under New Mexico law means to have the weapon in one's possession, and not necessarily to use it, during the robbery.

In this sense, as Magistrate Judge Khalsa described, New Mexico armed robbery is analogous to Massachusetts armed robbery.  (Doc. 12 at 20-21); *see Parnell*, 818 F.3d at 974.  In *Parnell*, the Ninth Circuit observed that, under Massachusetts' armed robbery statute, a defendant "must possess a dangerous weapon" during the robbery but need not "generally or openly display[]" it.  *Id.* at 979.  The *Parnell* court went on to determine that mere possession of a dangerous weapon during a robbery does not satisfy the ACCA's elements clause, because

> the elements clause requires the actual, attempted or *threatened* use of physical force, not a mere uncommunicated willingness or readiness to use such force.  A willingness to use violent force is not the same as a threat to do so.  The latter

---

[18] This is analogous to the issue presented in *United States v. Shuler*, in which the Tenth Circuit considered whether the carrying of firearms stolen during a robbery "was 'in relation to' the robbery within the meaning of [18 U.S.C.] § 924(c)(1)," which criminalizes, *inter alia*, the "carr[ying]" of a firearm "during and in relation to" a crime of violence.  181 F.3d 1188, 1189-90 (10th Cir. 1999).  In *Shuler*, the Tenth Circuit determined that the stolen firearms in question were not carried "in relation to" the robbery because they "were not intended or available for use in relation to the robbery, nor did they play an integral role in the robbery."  *Id.* at 1191.  Rather, "the only relationship between the robbery and the stolen firearms is [that the] stolen firearms were the bounty or object of the robbery."  *Id.*

> requires some outward expression or indication of an intention to inflict pain, harm or punishment.  The former does not.

*Id.* at 980 (emphasis in original) (citations omitted).  Considering this reasoning in the context of armed robbery, the court stated that

> [t]he possession of a dangerous weapon may indicate a robber's willingness to use that weapon if necessary to accomplish the criminal undertaking.  The mere fact an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way. . . .  There is a material difference between the presence of a weapon, which produces a *risk* of violent force, and the actual or threatened use of such force.  Only the latter falls within [the] ACCA's elements clause.

*Id.* (emphasis in original) (citations omitted).

In contrast, federal appellate decisions holding that armed robbery (as distinct from simple robbery) is a violent felony under the ACCA's elements clause have involved state statutes requiring the actual or threatened use of a dangerous or deadly weapon during the robbery.  *See, e.g., Redrick*, 841 F.3d at 484 (Maryland armed robbery is a violent felony under ACCA's elements clause; offense has as an element "use of a dangerous or deadly weapon"); *United States v. Smith*, 638 F. App'x 216, 219 (4th Cir. 2016) (North Carolina armed robbery is a violent felony under ACCA's elements clause; offense has as an element "use or threatened use" of dangerous weapon); *United States v. Johnson*, 530 F. App'x 528, 531-33 (6th Cir. 2013) (Tennessee armed robbery is a violent felony under ACCA's elements clause; offense has as an element use or threat to use deadly weapon).  As the *Redrick* court observed, the

> element of "use" of a dangerous or deadly weapon supplies at minimum a "threat" of physical force against the person of another.  And because the means employed is a "dangerous or deadly weapon," the required degree of force—that is, "*violent* force"—is present.

841 F.3d at 484.

In its Objections, the Government relies on *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010), to argue that New Mexico armed robbery nevertheless satisfies the ACCA's elements clause.  (Doc. 13 at 10-11.)  In *Ramon Silva*, the Tenth Circuit held that New Mexico aggravated assault by means of "unlawfully assaulting or striking at another with a deadly weapon" is a violent felony under the elements clause.  608 F.3d at 669-74.  The Government relies on the following language in *Ramon Silva* to support its position:

> threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of "force capable of causing physical pain or injury" in two different ways.  The conduct could always lead to substantial and violent contact, and thus it would always include as an element the threatened use of violent force.  And the conduct could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.

*Ramon Silva*, 608 F.3d at 672 (citations and internal quotation marks omitted); (*see* Doc. 13 at 10.)  As the Magistrate Judge stated, this reasoning is unremarkable in the context of the crime at issue in *Ramon Silva*, *i.e.*, a crime that has as an element the use of a deadly weapon to threaten or strike at someone.  (Doc. 15 at 14.)  It is beyond rational debate that, by using a deadly weapon in this manner, an aggressor invariably communicates to his victim that he may soon use the weapon to inflict death or great bodily harm.  (*Id.*)

However, the Court agrees with the Magistrate Judge that, notwithstanding the Government's arguments to the contrary, this reasoning cannot properly be extended to New Mexico armed robbery.  (Doc. 15 at 14-15.)  As discussed above, while New Mexico robbery does require the use of force, this can be nothing more than the force required to push a purse out from under the victim's arm, or pull it from the victim's grasp.  *Clokey*, 1976-NMSC-35 at ¶ 3, 89 N.M. 453, 553 P.2d 1260; *Curley*, 1997-NMCA-38 at ¶ 12, 123 N.M. 295, 939 P.2d 1103; *Verdugo*, 2007-NMCA-95 at ¶ 27, 142 N.M. 267, 164 P.3d 966.  Such conduct, unlike the

conduct at issue in *Ramon Silva*, does not invariably indicate to the victim that the defendant may soon use greater force, *i.e.*, force capable of causing the victim physical pain or injury. *Parnell*, 818 F.3d at 980 (a threat to use *Curtis Johnson* physical force "requires some outward expression or indication of an intention to inflict pain, harm or punishment").  Then, also unlike the offense at issue in *Ramon Silva*, New Mexico armed robbery does not require the display or use of a deadly weapon, and so does not categorically require the communication of a threat to the victim by that means, either.  (Doc. 12 at 16-20); *Parnell*, 818 F.3d 980 (mere possession of dangerous weapon during a robbery does not satisfy the ACCA's elements clause, because "the force clause requires the actual, attempted or *threatened* use of physical force, not a mere uncommunicated willingness or readiness to use such force") (emphasis in original) (citation omitted).

The Court finds significant the Magistrate Judge's observation that possessing a deadly weapon during a robbery certainly involves the *risk* that deadly force will be used, but merely possessing a deadly weapon without displaying it does not necessarily convey a *threat* to that effect.  (Doc. 15 at 15.)  Like the Magistrate Judge, the Court notes in this regard that *Ramon Silva* was decided before the Supreme Court struck down the ACCA's residual clause in *Samuel Johnson*, and as such the *Ramon Silva* court had no pressing need to distinguish between the "serious potential *risk* of physical injury" as provided by the residual clause, and the "*threatened* use of physical force" as provided by the elements clause.  (*Id.*); 18 U.S.C. § 924(e)(2)(B) (emphases added).  However, to the extent *Ramon Silva* suggests that the *risk* that violent force will be used is equivalent to a *threat* that such force will be used, it conflates the now-invalid residual clause with the still-valid elements clause contrary to *Samuel Johnson*, 135 S. Ct. at 2557, and the latter decision must control.

Finally, the Court acknowledges that several recent decisions and recommended dispositions in other cases in this District have arrived at a different result from the one the Court reaches here.  *See Contreras v. United States*, Civ. No. 16-671 RB/SMV, Order Adopting Mag. J.'s Proposed Findings & Recommended Disposition (Doc. 14, D.N.M. filed Feb. 24, 2017) (New Mexico robbery is crime of violence under U.S.S.G. § 4B1.2's elements clause) (Brack, J.); *Garcia v. United States*, Civ. No. 16-240 JB/LAM, Mem. Op. & Order Overruling Mag. J.'s Amended Proposed Findings & Recommended Disposition (Doc. 37, D.N.M. filed Jan. 31, 2017) (New Mexico robbery is violent felony under ACCA's elements clause) (Browning, J.); *Rhoads v. United States*, Civ. No. 16-325 JCH/GBW, Proposed Findings & Recommended Disposition (Doc. 17, filed Jan. 25, 2017) (New Mexico armed robbery is crime of violence under U.S.S.G. § 4B1.2's elements clause) (Wormuth, Mag. J.); *Hurtado v. United States*, Civ. No. 16-646 JAP/GJF, Proposed Findings & Recommended Disposition (Doc. 17, D.N.M. filed Jan. 11, 2017) (New Mexico robbery is crime of violence under U.S.S.G. § 4B1.2's elements clause) (Fouratt, Mag. J.); *Baker v. United States*, Civ. No. 16-715 PJK/GBW, Proposed Findings & Recommended Disposition (Doc. 9, D.N.M. filed Dec. 15, 2016) (New Mexico armed robbery is violent felony under ACCA's elements clause) (Wormuth, Mag. J.)  After careful consideration of the above decisions, however, the Court respectfully maintains a contrary position.

## III.    CONCLUSION

For all of the foregoing reasons, and for the additional reasons stated in the Magistrate Judge's PFRD and Supplemental PFRD, the Court finds that, after *Samuel Johnson*, New Mexico armed robbery no longer qualifies as a violent felony under the ACCA, and thus, the Court can no longer rely on Movant's prior conviction of this offense to enhance his sentence.

IT IS THEREFORE ORDERED that:

1.      The Government's Objections to Magistrate Judge's Proposed Findings and Recommended [Disposition], Supplement to United States' Objections to Magistrate Judge's Proposed Findings and Recommended [Disposition], and Objections to Magistrate Judge's Supplemental Proposed Findings and Recommended [Disposition] (Docs. 13, 14, 17) are OVERRULED;

2.      The Magistrate Judge's Proposed Findings and Recommended Disposition and Supplemental Proposed Findings and Recommended Disposition (Docs. 12, 15) are ADOPTED as an order of the Court;

3.      Movant's Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is GRANTED;

4.      Movant's sentence in Cr. No. 02-2092 MV is VACATED;

5.      The Court will order an expedited new Presentence Report in Cr. No. 02-2092 MV; and,

6.      The Court will set a hearing to resentence Movant in Cr. No. 02-2092 MV by separate order.

IT IS SO ORDERED.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE